# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHY COPES | : |
|           Plaintiff, | : |
| | : |
| v. | :   CIVIL ACTION NO. 16-5735 |
| | : |
| NANCY A. BERRYHILL, ACTING | : |
| COMMISSIONER OF SOCIAL SECURITY | : |
|           Defendant. | : |

## MEMORANDUM OPINION

Rufe, J.                                                                                                                                       April 1, 2019

## I.    INTRODUCTION

Plaintiff Kathy Copes filed this action seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff seeks reversal of the Commissioner's decision, arguing that the Administrative Law Judge's ("ALJ") finding that she is not disabled was not based on substantial evidence. The Commissioner argues that the ALJ's determination was supported by substantial evidence and should be upheld.

Upon referral, United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation ("R&R"),[1] finding that the ALJ's decision was based on substantial evidence, and recommending that this Court affirm the final decision of the Commissioner. Plaintiff has filed objections to the R&R, to which Defendant has responded. In addition to arguing the merits of Plaintiff's claim, Plaintiff's objections raise, for the first time, a challenge to the

---

[1] *See* Local R. Civ. Pro. 72.1.I(a); 28 U.S.C. § 636(b)(1)(B).

authority of the ALJ who adjudicated her case, based on the ruling of the United States Supreme Court in *Lucia v. SEC*.[2]

## II. STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of the administrative proceedings and the pleadings of the parties.[3] The court's review of legal issues is plenary, but its factual review is limited.[4] The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[5] For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] It is more than a mere scintilla, but requires less than a preponderance of the evidence.[7] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[8] The substantial evidence standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."[9] Despite the deference to administrative decisions, however,

---

[2] 138 S. Ct. 2044 (2018).

[3] 42 U.S.C. § 405(g).

[4] *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999).

[5] *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

[6] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted); *Jesurum v. Sec'y of the U. S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

[7] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[8] *Fargnoli*, 247 F.3d at 38.

[9] *Schaudeck*, 181 F.3d at 431.

"courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."[10]

"A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's position with or without a remand to the Secretary for a rehearing."[11] Finally, a district court may, in its discretion, "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[12]

## III. SOCIAL SECURITY LAW

In order to qualify for benefits, a person must be found to have a disability, defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations ("the Regulations") to determine whether a disability exists.[14] At step 1, the ALJ must determine whether the applicant is engaged in "substantial gainful activity;" if she is, the claim is denied. If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step 2 whether the applicant suffers from a severe, medically determinable impairment which significantly limits her ability to work. If the applicant has such an impairment, the ALJ must determine at step 3 whether the impairment found meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404,

---

[10] *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

[11] *Gilliand v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986) (internal citations omitted).

[12] 28 U.S.C. § 636(b)(1)(c).

[13] 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).

[14] *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); 20 C.F.R. § 404.1520.

3

Subpart P, Appendix 1 ("the Listings"),[15] or has an equivalently debilitating medical condition. If the applicant has a severe impairment that does not meet or equal an impairment in the Listings, the ALJ must determine at step 4 whether the applicant has the Residual Functioning Capacity ("RFC") to perform her former relevant work. If the applicant does not have the RFC to perform her previous work, the Commissioner must establish at step 5 that the applicant has the RFC to perform other work that exists in the national economy, considering her age, education and work experience. At this fifth step, if the Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work, the ALJ must find the applicant to be disabled.

## IV. DISCUSSION

### A. *The ALJ's Decision is Not Supported by Substantial Evidence*

The ALJ issued a written decision denying benefits to Plaintiff after reviewing the evidence regarding Plaintiff's claim and holding a hearing at which Plaintiff and a vocational expert testified. At step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.[16] At step 2, the ALJ found that Plaintiff has the following severe impairments: post-traumatic stress disorder (PTSD) with anxiety and agoraphobia, major depressive disorder, obesity, and hypertension.[17]

At step 3, the ALJ found that Plaintiff's severe impairments did not meet or equal an impairment in the Listings. With regard to Plaintiff's mental impairments, the Listings may be met in two ways. The "B" requirements are met if the impairments result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining

---

[15] *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

[16] R. 22.

[17] R. 22.

4

social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[18] The ALJ found that Plaintiff had no more than moderate difficulties in these categories and no episodes of decompensation of extended duration after the application date.[19]

The "C" requirements are met if the claimant has a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and either: repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.[20] The ALJ concluded that Plaintiff did not meet these criteria.[21] At step 4, the ALJ found that Plaintiff had the RFC to perform medium work, except that her nonexertional limitations meant that she was limited to unskilled and simple work in a low-stress environment, requiring only occasional contact with co-workers, supervisors, and the general public, and that she was unable to perform her past work.[22] At step 5, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful

---

[18] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B). As discussed below, episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

[19] R. 23–24.

[20] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C).

[21] R. 24.

[22] R. 25.

adjustment to work that exists in significant numbers in the national economy. Therefore, the ALJ concluded that Plaintiff was not disabled.[23]

Plaintiff's claimed disability onset date of March 16, 2011, was the date of an armed robbery during her shift as a post office clerk. As detailed in the R&R, Plaintiff presented the assessment of her treating psychotherapist, Christina Aicher-Roberts, M.S., who had been treating Plaintiff for several years, since shortly after the robbery. Ms. Aicher-Roberts diagnosed Plaintiff with PTSD and completed an RFC questionnaire stating that Plaintiff was limited by social anxiety and an inability to handle stress, could not complete a normal workday or workweek, and would miss more than four days of week per month. The therapist checked boxes that Plaintiff had "no useful ability to function" in terms of getting along with co-workers, dealing with the stress of semiskilled and skilled work or normal work stress, and maintaining socially appropriate behavior.[24] Ms. Aicher-Roberts further stated that Plaintiff "is able to function with basic life skills at home and sometimes, for short exposure periods in the community; however, she gets easily riled up, and exhibits either panic or socially inappropriate behaviors."[25] The prognosis stated that Plaintiff "could develop more coping strategies, but it is unlikely she can effectively return to old habits and behaviors."[26] The ALJ gave "little weight" to the treating therapist's assessment because it "was based on subjective complaints and is not consistent with observable clinical signs."[27] The only further explanation given for rejecting the

---

[23] R. 24.

[24] R. 357–58

[25] R. 357.

[26] R. 354.

[27] R.27.

6

opinion was evidence that Plaintiff "is able to Zumba and make trips to New York City to celebrate her birthday."[28]

The record includes other opinions, in addition to that of Plaintiff's treating psychotherapist, as to Plaintiff's mental health. Irving S. Wiesner, M.D., a psychiatrist, completed a supplemental report for workers' compensation in 2012, after Plaintiff made an unsuccessful attempt to return to work. Dr. Wiesner diagnosed Plaintiff as having PTSD with anxiety and agoraphobia, and a major depressive disorder, and stated that Plaintiff's prognosis was "very poor for return to any form of work at the present time and permanently for her not to be able to return to work in the post office due to the severity of her anxiety" and that she "does not like to be alone."[29] The ALJ gave "little weight" to Dr. Wiesner's assessment because the opinions were "conclusory and unsupported," and did not consider "additional evidence that has been received into the record."[30] The ALJ did not identify that evidence, but it may refer to the previously-cited evidence of Zumba classes and trips to New York City.

In 2013, Plaintiff was evaluated by Harry Orenstein, Ph.D., a consultative psychologist, who concurred in the PTSD diagnosis and checked on the form that Plaintiff's abilities for interacting appropriately with the public were markedly impaired but that she had no impairments relating to interacting appropriately with supervisors or co-workers, and that Plaintiff had extreme restrictions for responding appropriately to usual work situations and to changes in a routine work setting.[31] Again, the ALJ gave "little weight" to the assessment

---

[28] R. 26 (record citations omitted).

[29] R. 303–04.

[30] R. 26.

[31] R. 274. Dr. Orenstein also had noted in a separate report that Plaintiff "would have serious difficulty with competitive employment in that her anxiety runs high," but that "her functioning seems to be improving to a degree." R. 279.

7

because it was based on "subjective complaints" and was inconsistent with Plaintiff's ability to interact with friends, to travel, to go to stores, and to attend Zumba classes.[32]

Plaintiff also was evaluated by psychiatrist Eric W. Fine, M.D., in 2013. Dr. Fine diagnosed Plaintiff with PTSD and major stress disorder and opined that Plaintiff was unable to return to her past work and an "extremely guarded" prognosis.[33] The ALJ gave "partial weight" to the assessment, agreeing that Plaintiff could not return to her past work, but disagreeing that she could not perform simple, unskilled work activities.[34] Finally, in 2013, the State agency psychological reviewer, Helen Parshall, Ph.D., determined that Plaintiff had no restrictions of daily living activities, moderate difficulties in social functioning, and mild difficulties in maintaining concentration, persistence or pace.[35] The ALJ gave "partial weight" to these findings and determined that Plaintiff's level of impairment was greater than this assessment indicated, with mild limitations as to activities of daily living and moderate limitations in maintaining concentration, persistence, and pace, based upon the records received.[36]

The ALJ concluded that Plaintiff had the RFC to perform medium work limited to unskilled and simple work in a low-stress environment, requiring only occasional contact with co-workers, supervisors, and the general public.[37] The vocational expert testified that, considering Plaintiff's age (50), education, work experience, and RFC, there were jobs in

---

[32] R. 26.

[33] R. 322.

[34] R. 27.

[35] R. 81.

[36] R. 28.

[37] R. 25

8

sufficient numbers in the national economy that Plaintiff could perform with these restrictions, including janitor industrial cleaner, dishwasher, and floor waxer.[38]

As discussed above, the ALJ rejected, in whole or in part, every medical opinion in the record, and all except the State agency reviewer had determined that Plaintiff had significantly greater impairments than found by the ALJ. The Court cannot agree with the conclusion of the R&R that the ALJ's decision is nonetheless supported by substantial evidence. "[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence."[39] The ALJ's evidence is not adequate "when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence."[40] In other words, "[w]ithout any medical opinion being credited with regard[] to all of Plaintiff's limitations, the Court finds that the ALJ impermissibly relied on speculation or lay interpretation of medical evidence to reach the conclusion regarding Plaintiff's residual functional capacity."[41]

Along the same lines, "a treating physician's opinion that an individual cannot work may 'not be supplanted by an inference gleaned from treatment records reporting on [plaintiff] in an environment absent of the stresses that accompany the work setting.'"[42] This is a particularly salient point in this case, where Plaintiff's PTSD resulted from an incident at work, and "[t]he

---

[38] R. 29

[39] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

[40] *Burns v. Colvin*, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016) (citing *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 29–30 (3d Cir. 1986); *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36–37 (3d Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 58–59, (3d Cir. 1979); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978).

[41] *Thanh Tam Vo v. Colvin*, No. 14-541, 2015 WL 5514981, at *4 (M.D. Pa. Sept. 15, 2015) (citations omitted).

[42] *Callahan v. Astrue*, No. 10-2179, 2011 WL 5428556, at *3, (E.D. Pa. Nov. 7, 2011) (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).

9

principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability."[43] With regard to Ms. Aicher-Roberts, in particular, "[w]hile it is true that the opinions of a therapist are not entitled to controlling weight, those opinions are still considered 'important and should be evaluated on key issues such as impairment severity and functional effects.'"[44] The Court cannot accept that evidence that Plaintiff was able to go to the grocery store, attend exercise classes (which were a recommended part of her treatment), and occasionally travel to New York is sufficient to discount the opinion of the medical professionals who treated or examined Plaintiff. [45]

  B.  *Objection to the Authority of the ALJ under the Appointments Clause*

Plaintiffs also asserted for the first time in her objections to the R&R that the appointment of the ALJ was constitutionally invalid. In *Lucia v. SEC*, decided on June 21, 2018, the Supreme Court held in a case challenging an action by the Securities and Exchange Commission ("SEC") that ALJs who hear SEC cases are "Officers of the United States," and must be appointed by the President, a court of law, or a head of a department under the Appointments Clause to the United States Constitution.[46] Because the ALJs were not so

---

[43] *Morales*, 225 F.3d at 319.

[44] *Minner v. Astrue*, 741 F. Supp. 2d 591, 602 (D. Del. 2010) (quoting Social Security Ruling ("SSR") 06–3p, 2006 WL 2329939 at *1, 3 (S.S.A.2006); citing 20 C.F.R. § 404.1513(d); 20 C.F.R. § 404.1527(d)).

[45] The Court does not base the ruling on the varying GAF scores with which Plaintiff was assessed. As the Court of Appeals for the Third Circuit has held, "the latest edition of the Diagnostic and Statistical Manual of Mental Disorders, DSM–5, abandoned the GAF scale as a measurement tool. Because of this, the Social Security Administration now permits ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; but instructed that a 'GAF score is never dispositive of impairment severity,' and an ALJ should not 'give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence.'" *Hughes v. Comm'r Soc. Sec.*, 643 F. App'x 116, 119 n.2 (3d Cir. 2016) (quoting SSA AM–13066 at 5 (July 13, 2013)). The ALJ did not assess controlling weight to any of the GAF scores, and was not required to do so.

[46] *Lucia*, 138 S. Ct. at 2051 (citing U.S. Const. Art. II § 2, cl. 2).

appointed, the plaintiff in *Lucia* was entitled to a new hearing before a properly appointed official.[47]  The Court held that the challenge was timely because Lucia "contested the validity of the [ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court."[48]

The majority of courts to rule on the application of *Lucia* to Social Security cases have determined that challenges first raised in the district court come too late.[49] Because the Court remands for a new hearing on the merits, it need not determine whether Plaintiff forfeited any Appointments Clause claim as to the previous hearing.  It also appears that on remand the issue will be moot, as "[o]n July 16, 2018, the Acting Commissioner ratified the appointment of ALJs and [administrative appeals judges] and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims."[50]

## V. CONCLUSION

For the foregoing reasons, the Court sustains Plaintiff's objections to the R&R, grants Plaintiff's request for review, and remands for further consideration pursuant to the fourth sentence of 42 U.S.C. § 405(g).  An appropriate order will be entered.

---

[47] *Id*. at 2055.

[48] *Lucia*, 138 S. Ct. at 2055.

[49] *See Abbington v. Berryhill*, No. 17-552, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018) (collecting cases); *but see Bizarre v. Berryhill*, --- F. Supp. 3d ---, 2019 WL 1014194 (M.D. Pa. Mar. 4, 2019).

[50] Social Security Emergency Message (EM) 18003 REV 2, § B (available at: https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM) (last accessed Apr. 1, 2019).  *Accord* SSR 19-1p, 84 FR 9582 (Mar. 15, 2019) (discussing procedures for Appointments Clause challenges raised in cases pending at the administrative level).